UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

BRANDON MARCUS RESCH,

        Plaintiff,

v.

CATHOLIC CHARITIES OF JACKSON,
LENAWEE, AND HILLSDALE
COUNTIES et al.,

        Defendants.
_____/

Case No. 1:21-cv-914

Honorable Janet T. Neff

## **OPINION**

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101–12213. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Catholic Charities, Washington, Rewerts, Turner, and Kindel-Daniels under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's due process, equal protection, and Eighth Amendment

claims. Plaintiff's retaliation claims against Defendants Campfield and Gable, and his ADA claim against Defendant Gonzolas remain in the case.

## Discussion

I.  **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Catholic Charities of Jackson, Lenawee, and Hillsdale Counties (hereafter Catholic Charities).[1] DRF Advanced Substance Abuse Treatment (ASAT) program facilitator Arthur Dudley Campfield, MDOC Director Heidi Washington, DRF Warden Randee Rewerts, DRF ASAT Coordinator Renae Turner, DRF Classification Director Beth Kindel-Daniels, and DRF Administrative Assistant Dana Gonzolas.[2]

Plaintiff alleges that he arrived at the Charles Egler Reception & Guidance Center on August 31, 2018, to begin serving an indeterminate sentence of 6 months to 15 years, which established his earliest release date as February 21, 2018. The MDOC Parole Board subsequently recommended that Plaintiff, who has a diagnosed hearing impairment, complete the Advanced Substance Abuse Treatment (ASAT) program before being released. Plaintiff asserts that he agreed with the recommendation and began requesting enrollment in the program. Plaintiff was transferred to another facility on October 4, 2018.

---

[1] Plaintiff asserts that Catholic Charities contracted with the MDOC to provide facilitators for the ASAT program in the geographic area where Plaintiff was incarcerated during the pertinent time period. (Comp., ECF No. 1, PageID.2.)

[2] According to the complaint, Defendant Gonzolas also serves as the Americans with Disabilities Act Coordinator. The complaint and documents attached to it also refer to this individual by the name "Gonzales." For consistency, the Court has adopted the spelling used by Plaintiff in the caption and the list of Defendants.

In late February 2019, Plaintiff began ASAT, but was unable to complete the program because he was transferred to another facility after being assaulted by two gang members. On July 9, 2019, Plaintiff was given the opportunity to start ASAT at URF, but he declined because he knew he was going to be transferred before he could complete the program. Plaintiff states that the ASAT facilitator told him that the tentative completion date would be December 5, 2019, approximately five months later.

Plaintiff arrived at DRF on September 6, 2019, and immediately requested to be enrolled in ASAT. For reasons unknown to Plaintiff, the ASAT program was not available within level II at DRF between January 1, 2020, and September 8, 2020. Consequently, Plaintiff began the ASAT program on September 9, 2020. The program was facilitated by Ms. Ramsey, who was employed by Defendant Catholic Charities.

Plaintiff states that completion of ASAT requires participants to complete thirty-six group treatment sessions, and three individual one-on-one interviews. Plaintiff completed nineteen ASAT sessions and arrived for his second one-on-one interview when he was informed that Ms. Ramsey's employment had been terminated. Therefore, Plaintiff's ASAT participation was terminated on November 2, 2020.

On February 15, 2021, Plaintiff began ASAT a third time. The facilitator was Defendant Campfield, who was employed by Defendant Catholic Charities. Because of Plaintiff's hearing impairment, he was provided with an American Sign Language (ASL) interpreter by means of video relay interfacing (VRI) through a computer monitor. Throughout the first session, the VRI monitor repeatedly froze and digitized, rendering the interpreter unable to hear the other ASAT participants or the facilitator. The interpreter repeatedly informed Defendant Campfield of the difficulties. Plaintiff alleges that these interruptions annoyed Defendant Campfield.

Plaintiff wrote a letter to Defendant Gonzolas regarding the technical difficulties as well as the added difficulty because he could not read lips because of the mask mandate. Plaintiff requested an ASL interpreter pursuant to MDOC Policy Directive 04.06.156. Defendant Gonzolas denied Plaintiff's request in writing, stating that VRI is allowed.

On February 17, 2021, Plaintiff met with Defendant Campfield for his initial one-on-one interview. Defendant Campfield began conducting the interview without the use of the VRI, even though the VRI module was present. When Plaintiff requested the use of the VRI, Defendant Campfield shushed him. After roughly fifteen minutes of Defendant Campfield ignoring Plaintiff's requests for an interpreter, Plaintiff informed Defendant Campfield that he would not interact any further without the assistance of an interpreter and began writing a letter to the ADA Coordinator. At this point, Defendant Campfield got out of his chair and attempted to access an interpreter. When Defendant Campfield got up, he saw Plaintiff's letter. Both Defendant Campfield and Defendant Gonzolas attempted to access an interpreter without success. Defendant Campfield told Plaintiff that his interview would be rescheduled and to return to his housing unit.

Later that day, Plaintiff was scheduled to have a teleconference regarding the submission of grievances on non-compliance with the settlement agreement in *McBride v. MDOC*, Case No. 15-11222 (E.D. Mich.).[3] Plaintiff was escorted to the teleconference room by Defendant

---

[3] *McBride* is a class action lawsuit where plaintiffs are "all Deaf and/or Hard of Hearing individuals in the custody of the [Michigan Department of Corrections ("MDOC")] (whether now or in the future) who require hearing related accommodations, including but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC." *McBride v. MDOC*, No. 2:15-cv-11222 (E.D. Mich.) (Report and Recommendation to Deny Brandon Resch's Motions to Enforce Compliance with Settlement Agreement, ECF No. 151, PageID.4718). Plaintiff's motion to enforce compliance was denied because the Court determined that the most efficient means of addressing Plaintiff's issues was for him to pursue relief through the mediation process with the Settlement Monitor. *Id.* at (Ord., ECF No. 154, PageID.4751).

Gable, who proceeded to pull her mask down and yell so that Plaintiff could hear. Plaintiff then engaged in a teleconference with the settlement monitor. During the conference, Plaintiff complained of the lack of training of MDOC personnel and the refusal to provide Plaintiff with an interpreter and/or auditory aids.

The following day, Plaintiff arrived for his one-on-one interview with Defendant Campfield. While Plaintiff was waiting in the prisoner waiting room, Defendant Gable entered and began chastising Plaintiff for complaining to the *McBride* settlement monitor. Defendant Gable returned to her office but returned a short time later and again admonished Plaintiff for complaining in an even louder voice. Defendant Campfield then arrived and told Plaintiff that his one-on-one interview was delayed but would be conducted when the ASL interpreter arrived. Plaintiff then saw Defendant Gable again approaching the waiting room, so he moved into the hallway to avoid her. At this point, Interpreter Ms. Schulze and Litigation Coordinator Mr. Jerome arrived in the hallway and Defendant Gable returned to her office. Mr. Jerome noticed that Plaintiff was shaken and asked if he was okay; Plaintiff stated that he was not. While Plaintiff was explaining, Defendant Gable began to yell from her office and shoved a piece of paper through the window slot. Ms. Schulze told Plaintiff that he was being ordered to return to his housing unit. Plaintiff asked if that meant he would not be allowed to participate in his scheduled one-on-one interview, and Ms. Schulze indicated that that was correct. Plaintiff complied with the order.

Upon returning to his housing unit, Plaintiff telephoned the *McBride* settlement monitor and lodged a complaint regarding the retaliatory non-compliance with the settlement agreement. Plaintiff feared further retaliation and requested the initiation of an internal affairs investigation. Approximately thirty minutes later, Plaintiff was given a pass to return to control center to see Defendant Gable. Plaintiff reported back to the control center, where Defendant Gable ordered

him to submit urine for a drug test. Plaintiff complied and gave the sample to an employee, who appeared to insert a finger into the sample before capping it and placing it on a fire extinguisher storage locker. Plaintiff was subsequently told that he had tested positive for THC, while Defendant Gable pointed at Plaintiff and appeared to be yelling "see!" Plaintiff protested that he was not under the influence of any drugs and accused the unknown employee of tampering with his urine analysis kit. Defendant Gable allowed Plaintiff to submit a second sample, which Plaintiff did. Plaintiff states that the unknown employee again appeared to fumble with the cap and insert an index finger into the sample. The sample was then capped and placed on the fire extinguisher storage locker. Plaintiff was told that this sample was also positive for drugs. The sample was then sent to an outside lab.

On February 22, 2021, Plaintiff was told he could not participate in ASAT by Defendant Campfield. When Plaintiff stated that he wanted to participate in the session, he was shown a note that said his interpreter had been cancelled. Later that day, other ASAT participants told Plaintiff that Defendant Campfield had been on the phone telling someone that Plaintiff had been yelling and screaming during class, had handed a note to Defendant Campfield refusing to take the class, had tested positive for Suboxone twice, and had stolen information from a cube-mate and written a letter to that prisoner's wife, which resulted in Plaintiff being stabbed last month. Plaintiff states that prisoners Maxon and Hamilton both overheard this conversation. Plaintiff claims that other prisoners in the housing unit also heard Defendant Campfield and that Plaintiff's relationships with other prisoners were adversely affected.

Plaintiff attaches a copy of the discharge summary report for ASAT dated February 26, 2021, which indicates that he was terminated from the program for refusing to participate and for

6

violating program rules. (ECF No. 1-1, PageID.26.) In the comment section of the report, Defendant Campfield notes that on February 17, 2021:

> The client reported for his intake session in an agitated state accusing this facilitator of setting up confusing callout in order to set him up for failure. He was asked multiple times to please wait for the VRI to be set up however refused and continued to argue in a hostile manner even when written communication was attempted. After spending over an hour trying to establish a connection with the VRI with the help of the Ms. Gonzales, with our backs turned to him she spoked [sic] to me quietly about having a one-on-one interpreter for Mr. Resch. When we turned around, he stated, "that would be fine" without prompting.

(*Id.*) Defendant Campfield further notes that on February 19, 2021:

> This facilitator prepared a handwritten note for Mr. Resch as he was in the enclosed waiting area across from the communication bubble next to medical. *"Waiting for your interpreter so we don't have further misunderstanding. I want this to work for you."* Upon entering hallway Mr. Resch was standing and waiving [sic] his arms in an animated manner yelling at Officer Gable who was giving him a direct order to sit down and be quiet. After handing him the noted [sic] he stated that he was refusing to participate in ASAT as he would not "deal with that bitch" along with using other profane language. I asked if he would put that in writing, he stated emphatically "yes!" Officer Gable then gave him paper to do so.
>
> Approximately an hour later Officer Gable advised that Mr. Resch had tested positive for Suboxone. Claiming staff did not use proper chain of evidence he was given another test that was also positive for Suboxone.
>
> Due to the above behavior and positive drug screen, he was removed from the program.

(*Id.*, PageID.27.)

On March 5, 2021, Sergeant Wireman assured Plaintiff that a full investigation was being conducted into his termination from ASAT. On March 20, 2021, Plaintiff received a letter from the Parole Board stating that he would benefit from completing ASAT before being reconsidered for parole. However, Defendant Campfield allegedly stated in a report that Plaintiff had been discharged from ASAT for misbehavior. Plaintiff subsequently petitioned Defendant Catholic Charities to investigate the falsification of Defendant Campfield's report. Plaintiff also wrote to

Ms. Beth Boyd at the MDOC Office of Substance Abuse Service, requesting assistance in obtaining substance abuse treatment by any means possible.

On May 12, 2021, Plaintiff petitioned Classification Director Ms. Burns for a copy of the ASAT discharge summary. Plaintiff attaches a printout of his MDOC Misconduct Summary Report to his complaint, which shows that Plaintiff has not been charged with or convicted of substance abuse since 2010. (ECF No. 1-1, PageID.50.) On May 21, 2021, inmate Jacob Brenner told Plaintiff that Defendant Campfield had said that Plaintiff was going to be sent to the Cotton Correctional Facility. Plaintiff filed a formal grievance on June 10, 2021, which was rejected by Defendant Rewerts as being vague. (ECF No. 1, PageID.15; ECF No. 1-1, PageID.57.) Plaintiff filed a second grievance regarding termination on June 13, 2021, raising his equal protection claim. (ECF No. 1, PageID.15; ECF No. 1-1, PageID.55.) Plaintiff claims that Defendant Turner falsified a response to this grievance, stating that Plaintiff had become hostile while Defendants Gonzolas and Campfield were trying to set up the VRI and was removed from the ASAT class pursuant to his decision. (ECF No. 1, PageID.15-16; ECF No. 1-1, PageID.59.) The response also stated that Plaintiff had been placed in ASAT at another facility on February 25, 2019, but had been locked up for his own protection. (*Id.*) Plaintiff filed an appeal, which was denied by Defendant Rewerts on August 19, 2021. (ECF No. 1-1, PageID.61.) In the denial, Defendant Rewerts noted that Plaintiff had been given several opportunities to complete ASAT and that he had been disruptive, verbally aggressive, and refused to participate. (*Id.*)

On June 23, 2021, inmate Shaun Maher told Plaintiff that he had been present at the ASAT session where Plaintiff was supposedly disruptive. Inmate Maher recalled that Plaintiff had not been disruptive and offered to write a statement to that effect so long as Plaintiff helped him. Plaintiff explained that the statement had to be a true reflection of Inmate Maher's recollection.

8

Plaintiff then drafted the beginning of the statement based on what Inmate Maher told him, but walked away so that Inmate Maher could complete the statement.

On June 30, 2021, Plaintiff wrote to Ms. Winger, who was Assistant Deputy Warden of Programs at DRF to request assistance in reentering ASAT. On July 20, 2021, Plaintiff petitioned Defendant Reddin seeking assistance in reentering ASAT. Plaintiff also sent a two-page request for reconsideration form to Defendant Reddin. Defendant Reddin returned Plaintiff's request but noted that he was eligible to be placed on the waiting list on August 23, 2021. On July 22, 2021, Plaintiff received notice from the Office of the Legislative Ombudsman confirming receipt of Plaintiff's formal complaint regarding his termination from ASAT.

On August 1, 2021, Plaintiff sent a second request for reconsideration of termination to Defendant Reddin. Defendant Reddin refused to process Plaintiff's request. Plaintiff asked Defendant Rewerts if he could restart ASAT at session twenty where he had stopped previously, as other prisoners had been allowed to do, to no avail.

On October 5, 2021, Plaintiff explained his inability to complete ASAT to Parole Board Member Mr. Flanigan. When queried about the situation, MDOC employee Mr. Stevenson stated that Plaintiff would be starting ASAT the next Monday with Defendant Turner. Plaintiff indicated that he would be agreeable to that. However, when Plaintiff arrived for ASAT on October 12, 2021, it was being facilitated by Defendant Campfield. Within 25 minutes, Defendant Campfield ordered Plaintiff to leave.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments and under the ADA. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Respondeat superior

Plaintiff fails to allege that Defendants Catholic Charities, Washington, Rewerts, and Turner took any action against him, other than to suggest that they failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

11

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Catholic Charities, Washington, Rewerts, and Turner encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 action against those Defendants is premised on nothing more than respondeat superior liability, his action fails to state a claim.

In addition, Plaintiff makes no allegations against Defendant Kindel-Daniels. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to

dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Kindel-Daniels in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8. *See* Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B. Eighth Amendment

Plaintiff makes a conclusory assertion that Defendants violated his rights under the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison

13

confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

As noted above, Plaintiff's Eighth Amendment claim is entirely conclusory. Plaintiff fails to allege any facts showing that he was deprived of "essential food, medical care, or sanitation" or was subjected to "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Therefore, Plaintiff's Eighth Amendment claims are properly dismissed.

### C. Fourteenth Amendment Due Process

Plaintiff claims that Defendants' actions in preventing him from completing ASAT, which in turn affected his parole eligibility, violated his due process rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Court notes that Plaintiff has no inherent constitutional right to rehabilitation, education, job assignments, or other programming such as ASAT. *See Rhodes v. Chapman*, 452 U.S. 337, 348 (1981); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Newsom v. Norris*, 888 F.2d 371, 374–75 (6th Cir. 1989); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

Nor does state law create such an entitlement. Michigan's statutes and regulations give prison authorities complete discretion regarding programming assignments of prisoners. Michigan does not have statutes or administrative rules restricting the discretion of its prison administrators concerning such decisions. Under Michigan Department of Corrections regulations, prison authorities retain broad discretion regarding the assignment of prisoners to rehabilitative programs and work assignments. *See* MDOC Policy Directive 05.01.100 (effective Dec. 2, 2019), 05.02.110 (effective Oct. 5, 2020), and 05.02.112 (effective Apr. 5, 2021).

Finally, to the extent that Plaintiff claims termination from ASAT affected his ability to meet the conditions for parole eligibility, such a claim does not implicate a liberty interest. There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. Accordingly, since Plaintiff had no entitlement or liberty interest in completing ASAT, the Due Process Clause was not implicated by Plaintiff's termination from the program.

### D.    Fourteenth Amendment Equal Protection

Plaintiff also claims that his termination from ASAT violated his equal protection rights.

The Equal Protection Clause prohibits discrimination by government actors which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681–82 (6th Cir. 2011); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared

to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'").

Plaintiff offers little to aid the Court's resolution of his putative equal protection claim. In the complaint, Plaintiff references "Equal Protection" twice without providing any explanation or factual allegations that clearly support such a claim.[4] In a copy of a grievance that Plaintiff has attached to the complaint, he adds that Defendants Rewerts, Turner, and Campfield permitted two other prisoners to complete the ASAT program, but he was not permitted the same treatment.

Although Plaintiff alleges that Defendants impeded his attempts to complete the ASAT program, he does not allege that he was treated differently than others who were similarly situated. An "equal protection" plaintiff must be similarly situated to his comparators "in all relevant respects . . . ." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011); *see also Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) ("'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'"); *Tree of Life Christian Schools v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff bringing an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"). Plaintiff's allegation implies that he and the two other prisoners are similarly situated, but he states no facts to support that implication. Absent such allegations, Plaintiff cannot

---

[4] First, Plaintiff asserts that he "filed a Step I [grievance] relevant to his Equal Protection claim surrounding ASAT," but it was denied. (Compl., ECF No. 1, PageID.15.) The only other reference is within Plaintiff's buckshot first request for relief:

> Declare that Defendants Campfield, Catholic Charities, Washington, Rewerts, Turner, Gable, Kindel-Daniels, Reddin, and Gonzales, each independ[e]ntly and collectively violated Plaintiff's First, Eighth, and Fourteenth Amendment rights to Liberty, to be free from cruel and unusual punishment, as well as Due Process and *Equal Protection of laws, relevant to Plaintiff's wrongful termination and continued preclusion from accessing the ASAT programming* . . . .

(*Id.*, PageID.17) (emphasis added).

16

show that he is similarly situated to the comparators. *See Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . .").

Therefore, because Plaintiff fails to allege facts to show that comparators are similarly situated, Plaintiff has failed to state an Equal Protection claim. Accordingly, the Court will dismiss Plaintiff's Equal Protection claim.

### E. Retaliation

Plaintiff claims that Defendants Campfield and Gable retaliated against him for complaining about the lack of accommodation for his disability to the *McBride* settlement monitor by having him terminated from the ASAT program. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff states that he submitted complaints/grievances to the settlement monitor on February 17, 2021, and that on February 18, 2021, Defendant Gable chastised Plaintiff for making the complaints. Plaintiff subsequently lodged another grievance with the settlement monitor and Defendant Gable then ordered Plaintiff to submit to a drug test. Plaintiff claims that his test was

tampered with and resulted in a false positive for drugs. Plaintiff alleges that on February 22, 2021, he learned that Defendant Campfield falsely accused Plaintiff of yelling and screaming during ASAT class. Plaintiff states that Defendants Gable and Campfield succeeded in having Plaintiff discharged from the ASAT program. The Court concludes that Plaintiff has alleged sufficient facts to state a retaliation claim against Defendants Gable and Campfield.

### F.  Americans with Disabilities Act (ADA)

Plaintiff claims that Defendant Gonzolas violated the ADA when she failed to properly train and supervise her employees regarding Plaintiff's right to accommodations for his hearing disability, and that this resulted in Plaintiff's inability to participate in the ASAT program. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481–82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). Discrimination against a "qualified individual on the basis of a disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case under the ADA for failure to accommodate a disability, the plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the service, with or without reasonable accommodation; (3) the defendants knew or had reason to know of his disability; (4) he requested an accommodation; and (5) the defendants failed to provide the necessary accommodation. *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 603 (6th Cir. 2018). The Court concludes that Plaintiff

has set forth sufficient allegations to state an ADA claim against Defendant Gonzolas. Therefore, this claim may not be dismissed on initial review.[5]

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Catholic Charities, Washington, Rewerts, Turner, and Kindel-Daniels will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42

---

[5] However, the Court notes that the United States District Court for the Eastern District of Michigan may retain jurisdiction over some portion of this claim. As noted above, *see supra* note 4, Plaintiff has participated as a class member in *McBride. See e.g.*, *McBride v. MDOC*, No. 2:15-cv-11222 (E.D. Mich.) (ECF No. 194, PageID.5059). He has been represented by class counsel. *See id.*, (Class's Brief in Opposition to the MDOC's Appeal of Settlement Monitor's Recommendation Regarding Mr. Brandon Resch, ECF No. 187). Class counsel further signed a Stipulated Order, *id.*, (ECF No. 150), issued on February 20, 2020, describing a process that all parties agreed to follow for post-judgment complaints "pertain[ing] to the implementation of the terms and conditions of the Settlement Agreement." *Id.*, (ECF No. 150, PageID.4712).

The Stipulated Order appears to bind Plaintiff to the specified process when raising relevant claims. The Stipulated Order directed that the process "shall be adhered to." *Id.*, (ECF No. 150, PageID.4712). The process described by the Stipulated Order first requires that class members "submit their complaints to the Settlement Monitor" and later culminates in a decision rendered by Magistrate Judge David R. Grand, and all "parties agree[d] that Magistrate Judge Grand's decision will be final and binding upon the parties with respect to the Settlement Agreement and may not be objected to or further appealed." *Id.*, (ECF No. 150, PageID.4713–16.) The earlier Agreement created the position of a Settlement Monitor (Monitor). The Monitor would facilitate the parties' compliance with the Agreement. Under the Agreement, the Monitor's role would persist for two years after it was determined that the MDOC had implemented all of the terms of the Agreement. Among other duties, the Monitor ensures that the MDOC complies with the Agreement to provide "access to Qualified Interpreters" for "Core programming" such as ASAT. *Id.*, (ECF No. 118-2, PageID.4355); MDOC Pol'y Directive 05.01.100, Attachment A (eff. Dec. 2, 2019), https://www.michigan.gov/documents/corrections/05_01_100_672665_7.pdf.

The conduct Plaintiff describes in his ADA claim therefore appears to fall within the purview of the Monitor. Under the Stipulated Order, the "mediation process" relates only to claims contesting the implementation of the Agreement, but "requests for fees and/or money damages by a class member must be made through an independent cause of action." *McBride*, No. 2:15-cv-11222 (E.D. Mich.) (ECF No. 150, PageID.4716). In short, although Plaintiff may bring an action "for fees and/or money damages" in a new action, it is not clear at this early juncture whether he may also seek injunctive or declaratory relief.

U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, due process, and equal protection claims. Plaintiff's retaliation claims against Defendants Campfield and Gable, and his ADA claim against Defendant Gonzolas remain in the case.

    An order consistent with this opinion will be entered.


Dated:   April 12, 2022                         /s/ Janet T. Neff
                                                           Janet T. Neff
                                                           United States District Judge