UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDON RESCH, #304507,

              Plaintiff,                        Hon. Janet T. Neff

v.                                        Case No. 1:21-cv-914

CATHOLIC CHARITIES OF JACKSON,
LENAWEE, AND HILLSDALE
COUNTIES, et al.,

              Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment.
(ECF No. 25).   Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that
Defendants' motion be granted.

## BACKGROUND

Plaintiff is presently incarcerated with the Michigan Department of Corrections
(MDOC) at the Parnall Correctional Facility (SMT).   The events about which Plaintiff
complains occurred at the Carson City Correctional Facility (DRF).   Plaintiff has sued
Defendants Catholic Charities of Jackson, Lenawee, and Hillsdale counties (hereafter
Catholic Charities),[1]   DRF Advanced Substance Abuse Treatment (ASAT) program

---

[1] Plaintiff asserts that Catholic Charities contracted with the MDOC to provide
facilitators for the Advanced Substance Abuse Treatment (ASAT) program in the

facilitator Arthur Dudley Campfield, MDOC Director Heidi Washington, DRF Warden Randee Rewerts, DRF ASAT Coordinator Renae Turner, DRF Classification Director Beth Kindel-Daniels, and DRF Administrative Assistant Dana Gonzales.[2]

Plaintiff alleges that he arrived at the Charles Egler Reception & Guidance Center on August 31, 2018, to begin serving an indeterminate sentence of six months to fifteen years, which established his earliest release date as February 21, 2018.   The MDOC Parole Board subsequently recommended that Plaintiff, who has a diagnosed hearing impairment, complete the ASAT program before being released.   Plaintiff asserts that he agreed with the recommendation and began requesting enrollment in the program. Plaintiff was transferred to another facility on October 4, 2018.

In late February 2019, Plaintiff began ASAT, but was unable to complete the program because he was transferred to another facility after being assaulted by two gang members.   On July 9, 2019, Plaintiff was given the opportunity to start ASAT at URF, but he declined because he knew he was going to be transferred before he could complete the program.   Plaintiff states that the ASAT facilitator told him that the tentative completion date would be December 5, 2019, approximately five months later.

_____

geographic area where Plaintiff was incarcerated during the pertinent time period. (Comp., ECF No. 1, PageID.2.)

[2] According to the complaint, Defendant Gonzales also serves as the Americans with Disabilities Act (ADA) Coordinator.

Plaintiff arrived at DRF on September 6, 2019, and immediately requested to be enrolled in ASAT. For reasons unknown to Plaintiff, the ASAT program was not available within level II at DRF between January 1, 2020, and September 8, 2020. Consequently, Plaintiff began the ASAT program on September 9, 2020. The program was facilitated by Ms. Ramsey, who was employed by Defendant Catholic Charities.

Plaintiff states that completion of ASAT requires participants to complete thirty-six group treatment sessions, and three individual one-on-one interviews. Plaintiff completed nineteen ASAT sessions and arrived for his second one-on-one interview when he was informed that Ms. Ramsey's employment had been terminated. Accordingly, Plaintiff's ASAT participation was terminated on November 2, 2020.

On February 15, 2021, Plaintiff began ASAT a third time. The facilitator was Defendant Campfield, who was employed by Defendant Catholic Charities. Because of Plaintiff's hearing impairment, he was provided with an American Sign Language (ASL) interpreter by means of video relay interfacing (VRI) through a computer monitor. Throughout the first session, the VRI monitor repeatedly froze and digitized, rendering the interpreter unable to hear the other ASAT participants or the facilitator. The interpreter repeatedly informed Defendant Campfield of the difficulties. Plaintiff alleges that these interruptions annoyed Defendant Campfield.

Plaintiff wrote a letter to Defendant Gonzales regarding the technical difficulties and the added difficulty because he could not read lips because of the mask mandate. Plaintiff requested an ASL interpreter pursuant to MDOC Policy Directive 04.06.156. Defendant Gonzales denied Plaintiff's request in writing, stating that VRI is allowed.

On February 17, 2021, Plaintiff met with Defendant Campfield for his initial one-on-one interview. Defendant Campfield began conducting the interview without the use of the VRI, even though the VRI module was present.    When Plaintiff requested the use of the VRI, Defendant Campfield shushed him.    After roughly fifteen minutes of Defendant Campfield ignoring his requests for an interpreter, Plaintiff informed Defendant Campfield that he would not interact any further without the assistance of an interpreter and began writing a letter to the ADA Coordinator.    At this point, Defendant Campfield got out of his chair and attempted to access an interpreter.    When Defendant Campfield got up, he saw Plaintiff's letter.    Both Defendant Campfield and Defendant Gonzales attempted to access an interpreter without success.    Defendant Campfield told Plaintiff that his interview would be rescheduled and to return to his housing unit.

Later that day, Plaintiff was scheduled to have a teleconference regarding the submission of grievances on non-compliance with the settlement agreement in *McBride v. MDOC*, Case No. 15-11222 (E.D. Mich.).[3]    Plaintiff was escorted to the teleconference

---

[3] *McBride* is a class action lawsuit where plaintiffs are "all Deaf and/or Hard of Hearing individuals in the custody of the [Michigan Department of Corrections ("MDOC")] (whether now or in the future) who require hearing related accommodations, including

-4-

room by Defendant Gable, who proceeded to pull her mask down and yell that Plaintiff could hear. Plaintiff then engaged in a teleconference with the settlement monitor. During the conference, Plaintiff complained of the lack of training of MDOC personnel and the refusal to provide Plaintiff with an interpreter and/or auditory aids.

The following day, Plaintiff arrived for his one-on-one interview with Defendant Campfield. While Plaintiff was waiting in the prisoner waiting room, Defendant Gable entered and began chastising Plaintiff for complaining to the *McBride* settlement monitor. Defendant Gable returned to her office but returned a short time later and again admonished Plaintiff for complaining in an even louder voice. Defendant Campfield then arrived and told Plaintiff that his one-on-one interview was delayed but would be conducted when the ASL interpreter arrived. Plaintiff then saw Defendant Gable again approaching the waiting room, so he moved into the hallway to avoid her. At this point, Interpreter Ms. Schulze and Litigation Coordinator Mr. Jerome arrived in the hallway and Defendant Gable returned to her office. Mr. Jerome noticed that Plaintiff was shaken and asked if he was okay; Plaintiff stated that he was not. While

---

but not limited to interpreters, hearing devices, or other auxiliary aids or services, to communicate effectively and/or to access or participate in programs, services, or activities available to individuals in the custody of the MDOC." *McBride v. MDOC*, No. 2:15-cv-11222 (E.D. Mich.) (Report and Recommendation to Deny Brandon Resch's Motions to Enforce Compliance with Settlement Agreement, ECF No. 151, PageID.4718). Plaintiff's motion to enforce compliance was denied because the Court determined that the most efficient means of addressing Plaintiff's issues was for him to pursue relief through the mediation process with the Settlement Monitor. *Id.* at (Ord., ECF No. 154, PageID.4751).

Plaintiff was explaining, Defendant Gable began to yell from her office and shoved a piece of paper through the window slot.   Ms. Schulze told Plaintiff that he was being ordered to return to his housing unit.   Plaintiff asked if that meant he would not be allowed to participate in his scheduled one-on-one interview, and Ms. Schulze indicated that was correct.   Plaintiff complied with the order.

Upon returning to his housing unit, Plaintiff telephoned the *McBride* settlement monitor and lodged a complaint regarding the retaliatory non-compliance with the settlement agreement.   Plaintiff feared further retaliation and requested the initiation of an internal affairs investigation.   Approximately thirty minutes later, Plaintiff was given a pass to return to control center to see Defendant Gable.   Plaintiff reported back to the control center, where Defendant Gable ordered him to submit urine for a drug test. Plaintiff complied and gave the sample to an employee, who appeared to insert a finger into the sample before capping it and placing it on a fire extinguisher storage locker. Plaintiff was subsequently told that he had tested positive for THC, while Defendant Gable pointed at Plaintiff and appeared to be yelling "see!"   Plaintiff protested that he was not under the influence of any drugs and accused the unknown employee of tampering with his urine analysis kit.   Defendant Gable allowed Plaintiff to submit a second sample, which Plaintiff did. Plaintiff states that the unknown employee again appeared to fumble with the cap and insert an index finger into the sample.   The sample was then capped and placed on the fire extinguisher storage locker.   Plaintiff was told

that this sample was also positive for drugs.    The sample was then sent to an outside lab.

On February 22, 2021, Plaintiff was told he could not participate in ASAT by Defendant Campfield.    When Plaintiff stated that he wanted to participate in the session, he was shown a note that said his interpreter had been cancelled.    Later that day, other ASAT participants told Plaintiff that Defendant Campfield had been on the phone telling someone that Plaintiff had been yelling and screaming during class, had handed a note to Defendant Campfield refusing to take the class, had tested positive for Suboxone twice, and had stolen information from a cube-mate and written a letter to that prisoner's wife, which resulted in Plaintiff being stabbed last month.    Plaintiff states that prisoners Maxon and Hamilton both overheard this conversation.    Plaintiff claims that other prisoners in the housing unit also heard Defendant Campfield and that Plaintiff's relationships with other prisoners were adversely affected.

Plaintiff attaches a copy of the discharge summary report for ASAT, dated February 26, 2021, which indicates that he was terminated from the program for refusing to participate and for violating program rules.    (ECF No. 1-1, PageID.26.)    In the comment section of the report, Defendant Campfield notes that on February 17, 2021:

> The client reported for his intake session in an agitated state accusing this facilitator of setting up confusing callout in order to set him up for failure. He was asked multiple times to please wait for the VRI to be set up however refused and continued to argue in a hostile manner even when written communication was attempted. After spending over an hour trying to establish a connection with the VRI with the help of the Ms. Gonzales, with our backs turned to him she spoke [sic] to me quietly about having a one-

on-one interpreter for Mr. Resch. When we turned around, he stated, "that would be fine" without prompting.

(*Id.*) Defendant Campfield further notes that on February 19, 2021:

This facilitator prepared a handwritten note for Mr. Resch as he was in the enclosed waiting area across from the communication bubble next to medical. *"Waiting for your interpreter so we don't have further misunderstanding. I want this to work for you."* Upon entering hallway Mr. Resch was standing and waiving [sic] his arms in an animated manner yelling at Officer Gable who was giving him a direct order to sit down and be quiet. After handing him the noted [sic] he stated that he was refusing to participate in ASAT as he would not "deal with that bitch" along with using other profane language. I asked if he would put that in writing, he stated emphatically "yes!" Officer Gable then gave him paper to do so.

Approximately an hour later Officer Gable advised that Mr. Resch had tested positive for Suboxone. Claiming staff did not use proper chain of evidence he was given another test that was also positive for Suboxone.

Due to the above behavior and positive drug screen, he was removed from the program.

(*Id.*, PageID.27.)

On March 5, 2021, Sergeant Wireman assured Plaintiff that a full investigation was being conducted into his termination from ASAT. On March 20, 2021, Plaintiff received a letter from the Parole Board stating that he would benefit from completing ASAT before being reconsidered for parole. But Defendant Campfield allegedly stated in a report that Plaintiff had been discharged from ASAT for misbehavior. Plaintiff subsequently petitioned Defendant Catholic Charities to investigate the falsification of Defendant Campfield's report. Plaintiff also wrote to Ms. Beth Boyd at the MDOC Office of Substance Abuse Service, requesting assistance in obtaining substance abuse treatment by any means possible.

On May 12, 2021, Plaintiff petitioned Classification Director Ms. Burns for a copy of the ASAT discharge summary.   Plaintiff attaches a printout of his MDOC Misconduct Summary Report to his complaint, which shows that Plaintiff has not been charged with or convicted of substance abuse since 2010.   (ECF No. 1-1, PageID.50.)   On May 21, 2021, inmate Jacob Brenner told Plaintiff that Defendant Campfield had said that Plaintiff was going to be sent to the Cotton Correctional Facility.   Plaintiff filed a formal grievance on June 10, 2021, which was rejected by Defendant Rewerts as being vague. (ECF No. 1, PageID.15; ECF No. 1-1, PageID.57.)   Plaintiff filed a second grievance regarding termination on June 13, 2021, raising his equal protection claim.   (ECF No. 1, PageID.15; ECF No. 1-1, PageID.55.)   Plaintiff claims that Defendant Turner falsified a response to this grievance, stating that Plaintiff had become hostile while Defendants Gonzales and Campfield were trying to set up the VRI and was removed from the ASAT class pursuant to his decision.   (ECF No. 1, PageID.15-16; ECF No. 1-1, PageID.59.) The response also stated that Plaintiff had been placed in ASAT at another facility on February 25, 2019, but had been locked up for his own protection.   (*Id.*)   Plaintiff filed an appeal, which was denied by Defendant Rewerts on August 19, 2021.   (ECF No. 1-1, PageID.61.)   In the denial, Defendant Rewerts noted that Plaintiff had been given several opportunities to complete ASAT and that he had been disruptive, verbally aggressive, and refused to participate.   (*Id.*)

On June 23, 2021, inmate Shaun Maher told Plaintiff that he had been present at the ASAT session where Plaintiff was supposedly disruptive.   Inmate Maher recalled that Plaintiff had not been disruptive and offered to write a statement to that effect so long as Plaintiff helped him.   Plaintiff explained that the statement had to be a true reflection of Inmate Maher's recollection.   Plaintiff then drafted the beginning of the statement based on what Inmate Maher told him, but walked away so that Inmate Maher could complete the statement.

On June 30, 2021, Plaintiff wrote to Ms. Winger, who was Assistant Deputy Warden of Programs at DRF to request assistance in reentering ASAT.   On July 20, 2021, Plaintiff petitioned Defendant Reddin seeking assistance in reentering ASAT. Plaintiff also sent a two-page request for reconsideration form to Defendant Reddin. Defendant Reddin returned Plaintiff's request but noted that he was eligible to be placed on the waiting list on August 23, 2021.   On July 22, 2021, Plaintiff received notice from the Office of the Legislative Ombudsman confirming receipt of Plaintiff's formal complaint regarding his termination from ASAT.

On August 1, 2021, Plaintiff sent a second request for reconsideration of termination to Defendant Reddin.   Defendant Reddin refused to process Plaintiff's request.   Plaintiff asked Defendant Rewerts if he could restart ASAT at session twenty where he had stopped previously, as other prisoners had been allowed to do, to no avail.

-10-

On October 5, 2021, Plaintiff explained his inability to complete ASAT to Parole Board Member Mr. Flanigan.   When queried about the situation, MDOC employee Mr. Stevenson stated that Plaintiff would be starting ASAT the next Monday with Defendant Turner.   Plaintiff indicated that he would be agreeable to that.   However, when Plaintiff arrived for ASAT on October 12, 2021, it was being facilitated by Defendant Campfield.   Within 25 minutes, Defendant Campfield ordered Plaintiff to leave.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments and under the Americans with Disabilities Act (ADA).   The Court previously dismissed all Plaintiff's claims, save: (1) retaliation claims against Defendants Campfield and Gable, and (2) an ADA claim against Defendant Gonzales. (ECF No. 8-9).   Defendants Gable and Gonzales now move for summary judgment on the ground that Plaintiff failed to properly exhaust his administrative remedies. Plaintiff has responded to the motion. The Court finds that oral argument is unnecessary. *See* W.D. Mich. LCivR 7.2(d).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case."   *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

-11-

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).   Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).   The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.   The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).   Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d

at 735.  Stated differently, the "ultimate question is whether the evidence presents a
sufficient factual disagreement to require submission of the case to the jury, or whether
the evidence is so one-sided that the moving parties should prevail as a matter of law."
*Harden*, 2021 WL 1257802 at \*4.

While a moving party without the burden of proof need only show that the
opponent cannot sustain his burden at trial, a moving party with the burden of proof
faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).
Where the moving party has the burden, "his showing must be sufficient for the court to
hold that no reasonable trier of fact could find other than for the moving party."
*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  Accordingly, summary
judgment in favor of the party with the burden of proof "is inappropriate when the
evidence is susceptible of different interpretations or inferences by the trier of fact."
*Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action regarding prison
conditions under 42 U.S.C. § 1983 must first exhaust his administrative remedies.  *See
Porter v. Nussle*, 534 U.S. 516, 524 (2002).  This obligation only extends, however, to
such administrative remedies as are available.  *Ross v. Blake*, 578 U.S. 632, 642 (2016)
(a prisoner "must exhaust available remedies, but need not exhaust unavailable ones").

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007).   Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing.   *Ibid*.

With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules."   *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody.   Prior to submitting a grievance, a prisoner must attempt to resolve the issue with staff, unless prevented by circumstances beyond his control, or the issue falls within the jurisdiction of Internal Affairs.   MDOC Policy Directive 03.02.130 ¶ Q (Mar. 18, 2019).   The prisoner must attempt to resolve the matter within two days of becoming aware that there exists a grievable issue.   (*Id.*).

If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance, but such must be submitted within five business days after attempting to resolve the matter with staff.   MDOC Policy Directive 03.02.130 ¶ W

-14-

(Mar. 18, 2019).    The issues asserted in a grievance "should be stated briefly but concisely" and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."    MDOC Policy Directive 03.02.130 ¶ S (Mar. 18, 2019).

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due.    MDOC Policy Directive 03.02.130 ¶ DD (Mar. 18, 2019).    If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. MDOC Policy Directive 03.02.130 ¶ HH (Mar. 18, 2019).

As discussed above, the relevant time-period for Plaintiff's remaining claims is February 15, 2021, the date Plaintiff began ASAT for a third time, through October 12, 2021, the date Plaintiff was terminated from ASAT.    In support of their motion, Defendants have identified two grievances which Plaintiff submitted to Step I between these dates and pursued through Step III prior to initiating the present action.[4] Plaintiff does not dispute this aspect of Defendants' analysis or otherwise argue that he

---

[4] A prisoner must exhaust his administrative remedies prior to initiating legal action. Where a prisoner completes the administrative exhaustion process only after initiating legal action, such does not constitute proper exhaustion of administrative remedies. *See, e.g., See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Hopkins v. Ohio Department of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir., Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after a federal complaint has been filed").

pursued other grievances through all three steps, during the relevant time-period, prior to initiating this action.

A review of these two grievances, however, reveals that neither exhausts Plaintiff's remaining claims against Defendants Gable or Gonzales. Plaintiff initiated Grievance DRF-21-06-1699-28i on June 13, 2021, alleging that food service workers improperly handled "non-kosher" and "non-vegan" food trays immediately prior to "retrieving [Plaintiff's] religious [food] tray." (ECF No. 26 at PageID.276). On June 10, 2021, Plaintiff submitted Grievance DRF-21-06-1712-28b alleging that he was being denied access to the ASAT program. (ECF No. 26 at PageID.280). Neither of these grievances were asserted against Defendants Gable or Gonzales. Moreover, neither grievance alleges that he was subjected to unlawful retaliation or that his ADA rights were violated. Accordingly, neither of these grievances exhaust any of Plaintiff's remaining claims against Defendants Gable or Gonzales.

In response to Defendants' motion, Plaintiff advances two arguments neither of which are persuasive. First, Plaintiff argues that, due to intimidation by Defendants, he was prevented from filing grievances.n As the Supreme Court has held, a prisoner need only exhaust such administrative remedies as are available. *Ross v. Blake*, 578 U.S. 632, 642 (2016) (a prisoner "must exhaust available remedies, but need not exhaust unavailable ones"). The Court further observed that "when prison administrators thwart inmates from taking advantage of a grievance process through machination,

-16-

misrepresentation, or intimidation," the remedy in question is unavailable for purposes of the PLRA. *Id.* at 642-44.

To come within the exception articulated in *Ross*, however, Plaintiff must present "concrete and specific facts showing intimidation that would deter a person of ordinary firmness from continuing to use the prison's grievance process." *Sango v. Kennsey*, 2021 WL 2535538 at *2 (W.D. Mich., Apr. 19, 2021) (citing *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 577-78 (6th Cir. 2014)).   Similarly, mere concerns of intimidation are insufficient to establish that administrative remedies were unavailable.   *See, e.g., Briscoe v. D'Agata*, 2016 WL 3582121 at *8 (S.D.N.Y., June 27, 2016).

Plaintiff has presented no *evidence* that he was subjected to intimidation or other treatment that would deter a person of ordinary firmness from pursuing a prison grievance.   Instead, Plaintiff merely submits vague and unsworn statements that unidentified persons yelled at him, belittled him, and made "facial contortions" all of which he interpreted as communicating that he should stop filing grievances.   (ECF No. 33, PageID.313).   These unsworn statements do not constitute evidence.   Moreover, even if these statements were properly sworn, they lack the requisite specificity. Accordingly, the undersigned rejects Plaintiff's argument that the grievance process was unavailable.

Plaintiff next argues that he was relieved of the obligation to exhaust his remaining claims because an Internal Affairs investigation was conducted regarding his "access to/participation within the relevant ASAT program."   (ECF No. 33, PageID.315).

-17-

This argument fails for several reasons.   First, Plaintiff has presented no *evidence* that any investigation was conducted by Internal Affairs.   Second, the matter allegedly investigated by Internal Affairs does not concern Plaintiff's remaining claims.   Plaintiff claims that Defendant Gable subjected him to unlawful retaliation and Defendant Gonzales violated his rights under the ADA.   Neither of these allegations appear to have been investigated by Internal Affairs.   Plaintiff has identified no authority supporting the argument that the mere fact of an Internal Affairs investigation into one matter relieves a prisoner of the obligation to exhaust administrative remedies as to other allegations or claims.   Furthermore, even if the subject matter of Plaintiff's remaining claims were matters within the jurisdiction of Internal Affairs, Plaintiff would still be required to submit a grievance regarding such.   *See* MDOC Policy Directive 03.02.130 ¶¶ Q-R (Mar. 18, 2019).   The undersigned, therefore, rejects Plaintiff's argument that his obligation to exhaust administrative remedies was relieved by an alleged Internal Affairs investigation into a separate matter.

In sum, Defendants Gable and Gonzales have satisfied their burden to demonstrate that Plaintiff failed to properly exhaust his remaining claims against them. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 25) be granted and Plaintiff's remaining claims against Defendants Gable and Gonzales be dismissed without prejudice for failure to exhaust administrative remedies.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.   28 U.S.C. § 636(b)(1)(C).   Failure to file objections within the specified time waives the right to appeal the District Court's order.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 21, 2022                    /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge

-19-